## Ertel, Appellant, *v.* McCloskey.

Argued March 20, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS and ARNOLD, JJ.

*William F. Quinlan,* with him *Victor Frey,* for appellant.

*Thomas E. Comber, Jr.,* with him *Hubert P. Earle,* for appellee.

122

Ertel, assignee of The Drake of Philadelphia, Inc., owner of the hotel of that name and hereafter called Drake, sued McCloskey for $1975.28, a debt due to Drake by McCloskey, which Drake assigned to Ertel. Jury trial was waived and the trial judge found for defendant. Plaintiff's exceptions were dismissed by the court en banc; judgment was entered for defendant; and plaintiff appealed.

On September 10, 1942, McCloskey leased an apartment in Drake for two years from October 16, 1942, and agreed to pay $250 a month rent. In addition he agreed to pay all restaurant and service charges which, if not paid promptly were, under the terms of the lease, payable as additional rent. Defendant and his wife occupied the apartment until November 1, 1943, when he left her. She remained there, and before August 9, 1944, there was due and unpaid on the lease $1975.28. On or about July 15, 1944, Drake distrained *her* furniture and chattels in the apartment. She had not signed the lease. To secure release of her furniture and permission to remove it, she paid Drake $250 on July 26, 1944, and on August 9th she gave Drake the check of Victor Frey, Esq., her attorney, payable to Drake for $1325.28, and her personal note payable October 15, 1944 for $400. She paid the note at maturity.

An instrument in writing, signed by an agent for Drake, recited attendant facts, and provided: "The Drake of Philadelphia, Inc., in consideration of the foregoing payment, does hereby assign, transfer and set over to Philip Ertel, as evidence by separate writing, executed by it on the same date as these presents, all of its right, title and interest to the total claims of $1,975.28, . . ." Mrs. McCloskey was not allowed to move the furniture until Frey's check cleared the bank on August 18, 1944, and then the proper officers of Drake

executed an instrument (which for an unknown reason was dated August 14, 1944) whereby ". . . in consideration of the payment to it of the sum of $1.00 and other good and valuable considerations, the receipt whereof is hereby acknowledged, and intending to be legally bound hereby, does hereby assign, transfer and set over to Philip Ertel, . . . all of its right, title and interest of, in and to its claim for rent and charges in the nature of rent, constable costs and fees (made necessary by reason of the said Frank McCloskey's default in the payments of rent), in the amount of $1,975.28, arising from and growing out of the lease dated September 10, 1942, by and between The Drake . . . and Frank McCloskey for Apartment . . . of the Drake Hotel, . . . up to August 15, 1944; and does hereby grant to the said Philip Ertel the right to use its name in any proceedings which may become necessary in an attempt to enforce and collect the said claim by him against Frank McCloskey." Ertel's action was based on the second assignment.

I. Ertel is Mrs. McCloskey's brother, and, although a consideration of $1.00 is recited, he paid nothing for the assignment. As between Ertel and Drake the defense of lack of consideration was not available, since the assignment was under seal and evidences the signer's intention "to be legally bound." Act of May 13, 1927, P. L. 985, §1, 33 P. S. §6. Nor was the defense available to McCloskey. The debtor may not question the motive or purpose underlying the assignment, or set up lack of consideration as a defense. 6 C. J. S., Assignments, §132. Since a chose in action may be the subject of a gift, *Licey v. Licey,* 7 Pa. 251, no consideration is necessary to the validity of an assignment. *Bond v. Bunting,* 78 Pa. 210.

II. The court below refused recovery, holding that payment of a debt by the third party, accepted by the

creditor, relieves the debtor of further obligation to the creditor.[1] It held that "on August 14, 1944 the Drake had nothing to assign, its claim having been paid off on August 9th; that plaintiff therefore took nothing by the purported assignment and cannot maintain the present action against defendant." It is not particularly material, but actually Drake was not "paid off" on August 9th; it did not release the furniture until after Frey's check cleared the banks. But even so, on August 9th Drake effectually assigned its claim to Ertel by words in praesenti. It did not, as the court held, agree to assign; it actually assigned on that date. If the agent who executed the August 9th assignment was authorized to sign on behalf of Drake, that assignment was as valid as against McCloskey as the second assignment executed formally by the corporate officers.

Nor is payment by a third party a discharge of the debtor's obligation. The intentions of the parties govern. Prima facie, payment by a third party of a debtor's obligation is not a discharge of the debt but a purchase of it. *Brice's Appeal*, 95 Pa. 145; *Brown v. Marmaduke*, 248 Pa. 247, 93 A. 1023; *Levene v. Lanard*, 126 Pa. Superior Ct. 573, 191 A. 219. The documents do not overcome the presumption; they fortify it; and there is no evidence whatever that Mrs. McCloskey intended to discharge her husband's debt or that Drake intended to extinguish the debt by acceptance of her payment. All the evidence is definitely to the contrary.

---

[1] Appellee relies upon Restatement, Contracts, §421: "A payment or other performance by a third person, *accepted by a creditor as full or partial satisfaction* of his claim, discharges the debtor's duty *in accordance with the terms on which the third person offered it.*" (Emphasis added.) That section does not sustain his position. Nor does Williston on Contracts, §1858, upon which the court relied, support its decision. Both relate to the doctrine of accord and satisfaction, which is wholly irrelevant to this issue.

III. The hornbooks teach that an assignee takes the debt subject to the equities between the original parties. That is, Ertel took the debt subject to any defense which McCloskey had against Drake's claim at the time of the assignment, or arising after that date but before McCloskey had notice of the assignment. Payment by McCloskey to Drake, or a release by Drake, before McCloskey had knowledge of the assignment would defeat Ertel's claim. *Florence v. D. L. & W. R. R. Co.,* 258 Pa. 456, 102 A. 133; *Burger v. Freedom Twp.,* 126 Pa. Superior Ct. 128, 190 A. 387. But Ertel's claim against McCloskey could not be defeated by any transaction between Mr. and Mrs. McCloskey after the assignment. Yet the court below stated: "What induced us to our conclusion was the strong equity in defendant's favor, for during part of the time the unpaid rent was accruing alimony payments of $750 a month were being paid to Mrs. McCloskey pursuant to court order, and afterwards there was a final property settlement between husband and wife on October 18, 1944. The alimony was adequate for her to pay the apartment rent, and the property settlement in the substantial amount of $75,000 clearly was intended to settle everything outstanding between them."

Alimony pendente lite was decreed July 19, 1944, and the first payment thereof was made on July 25, 1944. The $1975.28 debt had fully accrued on July 15, 1944. Alimony, in the absence of proof to the contrary, must be assumed to provide for *future* maintenance. It was certainly not awarded so that she could pay McCloskey's debts, contracted by him for her support in the past.

Analysis of the settlement agreement does not sustain the court's pronouncement. It was dated October 18, 1944, and states that two actions of divorce were then pending, one by the wife for a decree a mensa et thoro,

another by the husband for an absolute decree.[2] It recites various facts, and twice states that its purpose is "to adjust and settle the question of alimony, counsel fees, and future maintenance and support to which Elizabeth D. E. McCloskey is entitled or may be entitled, and her rights in the real and personal property and assets of Frank M. McCloskey." It provides for a payment of $75,000 to a trustee, who shall pay counsel fees to Mrs. McCloskey's attorney and $500 monthly to her "until the expiration of nine months from the date of the execution hereof, or until the death of Elizabeth D. E. McCloskey or until the death of Frank M. McCloskey, or the presentation to Joseph M. Conover, as hereinafter provided, of a certified copy of a final decree in absolute divorce, whichever soonest occurs within the nine months' period aforesaid." When an absolute decree has been entered, the trustee is authorized to pay the balance of the $75,000 to her attorney, and if a decree should not be entered within nine months the trustee shall return the balance to McCloskey. Provision is made in the event of the death of either party within the nine month period. The concluding stipulation is: "That this settlement is made to obtain reasonable maintenance and support for the said Elizabeth D. E. McCloskey and to settle her rights in the real and personal estate of Frank M. McCloskey, and that there is no agreement on the part of Frank M. McCloskey that her further proceedings in her action for divorce shall remain unopposed by him or be facilitated by him. It is understood and agreed that both of the actions in divorce, pending as aforesaid, shall be proceeded in adversely until they are adjudicated by decree of the court."

It will be noted: (a) Although two actions for divorce were pending the agreement contemplated the granting

---

2 The record does not clearly show which of these two applications for divorce was finally granted. We have assumed an absolute decree was entered in the husband's action.

of the *absolute* divorce instituted by the husband; (b) although the agreement purports to "settle her rights in the real and personal estate of Frank M. McCloskey", she did not therein expressly release or waive her rights to dower or other interest in his property; (c) that *he* did not release his rights in *her* property; (d) that provision is made only for her "future maintenance and support"; (e) and that she did not assume the payment of his debts or release him from any claims she may have against him arising out of past transactions. The parties were clearly contemplating an absolute divorce, and therefore made no provision concerning or altering the legal effect of such a decree. Their respective rights, apart from the $75,000 payment, were not finally settled by the agreement. They were to be determined by reference to the law which defines the effect of an absolute decree in divorce proceedings. After the divorce was entered, Mrs. McCloskey was entitled to no more or less than the law allows a woman divorced by an absolute decree.

Before the divorce, Mrs. McCloskey could have taken the assignment in her own name and sued him upon it. Act of May 1, 1913, P. L. 146, §1, 48 P. S. §114. The divorce did not bar her claim. *Flattery v. Flattery,* 91 Pa. 474; *Cornelius v. Cornelius,* 104 Pa. Superior Ct. 455, 160 A. 150; *Schofield v. Schofield,* 124 Pa. Superior Ct. 469, 189 A. 572. Or, without taking an assignment she could have sued him, before and after the divorce, for restitution, since she paid the Drake bill to protect her own property. Restatement, Restitution, §103; *Hogg v. Longstreth,* 97 Pa. 255; *Mangold v. Isabella Furnace Co.,* 31 Pa. Superior Ct. 275; *Lehigh Valley Coal Co. v. Coxe Bros. & Co., Inc.,* 327 Pa. 23, 192 A. 658. And, since restitution is redressible in assumpsit, she could have assigned that claim to Ertel. Restatement, Restitution, §5, comment *b.* So that, even if the assignment to Ertel was a mere subterfuge and Mrs.

McCloskey is the real party in interest, as appellee contends, she has a substantial and meritorious legal claim, and McCloskey possesses no equity which will prevail over it. Certainly, the events that transpired subsequent to the assignment did not produce an equity which is available to McCloskey in the action by Ertel.

IV. In his affidavit of defense McCloskey denied that he was indebted to Drake for $1975.28, but his own counsel proved the payments made by Mrs. McCloskey to Drake to procure the release of her furniture, and that the payments were made on account of McCloskey's arrearages on the lease. This, with other evidence, constitutes sufficient proof of the amount due and, even though there is no express finding of the amount, supports a judgment for that sum.

The judgment is reversed and is here entered for plaintiff against defendant for $1975.28 with interest from August 14, 1944.